FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 JAN -3 P 12: 28
CLERK'S OFFICE
AT GREENBELT
BY ______ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

**ARELIS TINOCO,**

**Plaintiff,**

**v.** **Case No.: GJH-16-752**

**THESIS PAINTING, INC.,**

**Defendant.**

* * * * * * * * * * * * *

## MEMORANDUM OPINION

This removal action stems from Arelis Tinoco's ("Plaintiff" or "Tinoco") sexual discrimination claims against her former employer, Thesis Painting, Inc. ("Defendant" or "Thesis"), for purported violations of Chapter 27 of the Montgomery County Code. Pending before the Court is Defendant's Motion to Dismiss or in the Alternative, Transfer to the Eastern District of Virginia, ECF No. 2. A hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Court will deny Defendant's Motion to Dismiss.

### I. BACKGROUND[1]

Tinoco is a resident and domiciliary of Montgomery County, Maryland. ECF No. 6 ¶ 6. Tinoco was employed by Thesis as a laborer from March 26, 2014 through February 20, 2015. *Id.* ¶ 9. Although Thesis is a Virginia corporation, it regularly performs work and services in the State of Maryland, including within Montgomery County, Maryland. *Id.* ¶¶ 3, 7. Thesis was a predominantly male environment, and Tinoco alleges that she was regularly the subject of sexual comments while working at Thesis' different jobs sites. *Id.* ¶ 16. Specifically, she claims that one

[1] Unless stated otherwise, for the purpose of this Motion, all facts are taken from Plaintiff's Complaint and are accepted as true.

male colleague, Edgar,[2] started a rumor that she was a prostitute saying, "I went out with [Tinoco] and she charged me $100 and she took me to the apartment where her daughter was also." *Id.* ¶ 17. This led to male colleagues at her job sites making comments such as "she is the woman who charges $100 to sleep with men," *id.* ¶16, and Tinoco being informed by a co-worker at the company's morning meeting that others were talking about her "selling herself." *Id.* ¶ 18. Additionally, when a new painter arrived on the job on or around January 22, 2015, he referred to her by asking "for the girl who charges $100." *Id.* ¶ 19. Because of this harassment, Tinoco suffered mental anguish, frequent headaches, sleepless nights and an irregular appetite. *Id.* ¶ 20. Tinoco claims that two of Thesis' foremen, Nelson and Carlos, knew about these comments but did not inform Human Resources or higher-level management. *Id.* ¶ 18. Thus, Thesis did not conduct an investigation nor did they take any disciplinary measures. *Id.*

In addition to harassment by her co-workers, Tinoco alleges that she was sexually harassed by Elmer Lazo ("Lazo"), her direct supervisor on a project she was assigned to in January 2015, located at the Twinbrook apartment building site in Rockville, an area within Montgomery County, Maryland. *Id.* ¶ 22. Tinoco claims that from November 2014 through January 2015, Lazo sent her crude, sexually explicit messages. *Id.* ¶ 23-24. For example, on January 12, 2015, he asked her "when we gonna fuck" and told her not to go into work because he would pay her for the day if she would take his offer to "show you what 2 do with a guy." *Id.* ¶ 25. Tinoco responded to this message by saying, "[w]hat do you want?" to which Lazo replied, "I wanna have fun with u." *Id.* ¶ 26. Although Tinoco attempted to demonstrate that Lazo's conduct was unwelcome by stating "[y]ou scare me," Lazo went on to text her "u gonna leave me wanting 2 make love 2 u that's so mean baby." *Id.* Lazo continued the exchange of text messages on the following day, making more sexually harassing comments such as "I wanna

[2] The Court will use first names where an individual's last name has not been provided in the Complaint.

make love 2 u baby" and "I think u need a good massage 2 relax baby. I'm up for it, I got lots of experience baby." *Id.* ¶ 28.

As a result of these experiences, on January 23, 2015, Tinoco complained to Thesis' co-owner, Barbara Spyridakis ("Spyridakis"), about the sexual harassment she was experiencing. *Id.* ¶¶ 21, 29. At this meeting, Tinoco verbally conveyed her concerns and showed Spyridakis the text messages she received from Lazo. *Id.* ¶ 29. Nonetheless, Thesis took no steps to address her concerns, such as disciplining the harassers or conducting sexual harassment trainings. *Id.* ¶ 21.

Shortly after making this report, Tinoco had her hours drastically reduced. *Id.* ¶ 30. After a few weeks, Tinoco was again given regular work, but was assigned to a job site where Lazo, one of her alleged harassers, would be her supervisor. *Id.* ¶ 31. Rather than work with Lazo as her supervisor, Tinoco left her job on or about February 20, 2015. *Id.* ¶ 32.

On January 20, 2016, Plaintiff commenced the above-captioned matter in the Circuit Court for Montgomery County, Maryland. ECF No. 1-1 ¶ 1. Plaintiff brought this case pursuant to Md. Code, State Gov't § 20-1202, which allows a person who is "subjected to a discriminatory act prohibited by the county code," here Chapter 27 of the Montgomery County Code, to maintain a civil action against the person that committed the alleged discriminatory act. Md. Code, State Gov't § 20-1202.

On March 15, 2016, Defendant removed the matter to this Court. ECF No. 1. That same day, Defendant filed a Motion to Dismiss based on improper venue and failure to state a claim, moving in the alternative to transfer the case to the Eastern District of Virginia. ECF No. 2. On April 14, 2016, Plaintiff filed a Motion to Remand, ECF No. 18, which the Court denied on November 1, 2016, ECF No. 22. Plaintiff subsequently filed an Opposition to Defendant's Motion to Dismiss, ECF No. 26, and Defendant submitted a timely Reply. ECF No. 27. In its

Reply, Defendant raises for the first time a lack of subject matter jurisdiction, and also moves to dismiss on that ground. ECF No. 27 at 17.

## II. DISCUSSION

### A. Motion to Dismiss: Improper Venue R. 12(b)(3)

Defendant alleges that that the case should be dismissed based on improper venue. A motion to dismiss for improper venue arises under Federal Rule of Civil Procedure 12(b)(3). It is the Plaintiff's burden to establish that venue is proper. *See Davis v. White*, No. CV RDB-15-1108, 2016 WL 1159206, at *4 (D. Md. Mar. 24, 2016). However, "in deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Id.* (quoting *Three M Enters., Inc. v. Tex. D.A.Ar. Enters.*, Inc., 368 F. Supp. 2d 450, 454 (D. Md. 2005)).

Where, as here, a state action is removed to federal court, "venue is governed exclusively by the federal removal statute, 28 U.S.C. § 1441(a)," rather than the general venue statute, 28 U.S.C. § 1391. *Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, 958 F. Supp. 2d 609, 613 (D. Md. 2013). Thus, "the only question that must be answered to determine the propriety of venue is whether removal was effectuated to the district court 'for the district and division embracing the place' where the suit was filed originally." *Id.* (quoting *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953)); *see also Hollis v. Florida State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001). This case was commenced by Plaintiff in the Circuit Court for Montgomery County, Maryland. ECF No. 1-1 ¶ 1. Because the Southern Division of the District of Maryland encompasses the Circuit Court for Montgomery County, removal was properly effectuated under §1441(a) and Defendant's Motion to Dismiss for improper venue is denied.

**B. Motion to Transfer Venue**

Even when venue is proper, a defendant may request that their case be transferred pursuant to 28 U.S.C. § 1404(a), which allows transfer "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Here, Defendant argues that the case should be transferred to the U.S. District Court for the Eastern District of Virginia, located in Alexandria, Virginia. ECF No. 3 at 5.

"To prevail on a motion to transfer venue under § 1404, 'the defendant must show by a preponderance of the evidence' that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009)(quoting *Helsel v. Tishman Realty & Constr. Co.*, Inc., 198 F.Supp.2d 710, 711 (D. Md. 2002)). "Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion…to transfer pursuant to § 1404(a)." *Id.* When deciding a motion to transfer venue, the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988).

> The host of convenience factors a court should consider include: (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*CoStar Realty Info., Inc.*, 604 F. Supp. at 770–71(citing *Brown v. Stallworth*, 235 F.Supp.2d 453, 456 (D.Md.2002)). Deference is generally given to a plaintiff's choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (generally, there is "a strong presumption in

favor of the plaintiff's choice of forum."). Furthermore, the decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Ctr., Inc.*, 933 F.2d 1253, 1257 (4th Cir.1991).

In support of its motion, Defendant notes the lack of connection to the forum; that Defendant and its witnesses would be inconvenienced by travelling from Springfield, Virginia to Greenbelt, Maryland; and that their case would be reviewed more promptly given the Eastern District of Virginia's lighter case load. ECF No. 3 at 6-8. These arguments are unpersuasive in light of the deference given to the plaintiff's choice of forum, the relative lack of hardship due to the close proximity of the two courthouses, and "the appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action." [3] *CoStar Realty Info., Inc.*, 604 F. Supp. at 771. Thus, Defendant's Motion to Transfer is denied.

**C. Motion to Dismiss: Failure to State a Claim R. 12(b)(6)**

Turning to the sufficiency of Plaintiff's Complaint, Defendant argues that Plaintiff has not alleged enough facts to support her claims of hostile workplace, constructive discharge and retaliation, and thus moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's Motion to Dismiss is denied.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556

---

[3] Plaintiff brought this case pursuant to a Maryland statute, which allows a person who is "subjected to a discriminatory act prohibited by the county code," here Chapter 27 of the Montgomery County Code, to maintain a civil action against the person that committed the alleged discriminatory act. Md. Code, State Gov't § 20-1202.

U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In an employment discrimination case such as this, "pleadings need not 'contain specific facts establishing a *prima facie* case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cnty.,* No. 09-2453, 2010 WL 3369169, at *3 (D. Md. Aug.23, 2010 (quoting *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002)). Such a requirement "would essentially create a 'heightened pleading standard' under which a plaintiff without direct evidence of discrimination would need to plead a *prima facie* case even though she might uncover direct evidence during discovery." *Id.* (quoting *Swierkiewicz,* 534 U.S. at 511-12). If this were the case, a plaintiff claiming employment discrimination would have "'to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.'" *Id.* (quoting *Swierkiewicz,* 534 U.S. at 512).

The Fourth Circuit "has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each

element of his claim." (internal citation omitted)). Thus, while a plaintiff pleading a discrimination claim does not need to *establish* a *prima facie* case under *McDonnell Douglas* to survive a motion to dismiss, *Swierkiewicz,* 534 U.S. at 510, she must still plead facts sufficient to state each element of the asserted claim. *See Bass,* 324 F.3d at 765 ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief.") (emphasis in original).

Here, Plaintiff alleges sexual discrimination in the form of hostile workplace, constructive discharge and retaliation in violation of the Montgomery County Code. "Maryland courts construe such claims similarly to those made under Title VII." *Whittaker v. David's Beautiful People, Inc.*, No. CV DKC 14-2483, 2016 WL 429963, at *2 n.2 (D. Md. Feb. 4, 2016)(citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 504 (2007) ("Considering the mimicry of state and local laws to Title VII, it is appropriate to consider federal precedents when interpreting state and local laws."). Thus, the Court will look to case law interpreting Title VII to guide its analysis of each of Plaintiff's claims.

Defendant argues that as a threshold matter, Plaintiff fails to state a claim for relief because she does not put forward any facts alleging that the conduct occurred in Montgomery County, Maryland or that Thesis is a Montgomery County employer. ECF No. 27 at 18.[4] While not specified in Chapter 27 of the Montgomery County Code ("MCC"), under which Plaintiff brings her claims, recent Maryland state court cases have clarified that the MCC provides relief for residents of Montgomery County for employment discrimination occurring within the county.

[4] In its reply memorandum, Defendant also fashions this argument as a challenge to the Court's subject-matter jurisdiction under Rule 12(b)(1) but fails to articulate the relevance of this argument to the Court's jurisdiction. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the Plaintiff seeks damages in excess of $75,000. Thus, the Court will interpret this argument as a challenge under Rule (12)(b)(6) for failure to state a claim.

*See Edgewood Mgmt. Corp. v. Jackson*, 66 A.3d 1152, 1173 (2013); *see also Washington Suburban Sanitary Comm'n v. Phillips*, 994 A.2d 411, 423–24 (2010). In addition, the MCC defines employer as "any person who employees one or more individuals in the County, either for compensation or as a volunteer." MCC Sect. 27-6.

Here, Plaintiff states that she is a resident of Montgomery County, ECF No. 6 ¶ 6, and that she was subject to employment discrimination while working within Montgomery County. Specifically, she alleges that in January 2015, she worked on a project located at the Twinbrook apartment building site in Rockville, an area within Montgomery County, Maryland. ECF No. 6 ¶ 22. She further states that she was regularly the subject of sexual comments while working at Thesis' different jobs sites. *Id.* ¶ 16. While Plaintiff could have more clearly laid out the location of each job site where she was harassed, at this stage, her allegations together support the inference that at least one of the job sites at which she was harassed was located in Montgomery County, Maryland. [5]

In addition, Plaintiff alleges that she was sexually harassed in January 2015 by Lazo, her direct supervisor at the Twinbrook site. ECF No. 6 ¶ 22. Defendant claims that the Court should ignore these allegations because, according to a work schedule submitted by Thesis, Lazo was not Tinoco's supervisor. ECF No. 27 at 18; ECF No. 3-4. However, Defendant's proffer of a work schedule for one week in February 2015 does not show that Lazo was not supervising Tinoco in January 2015 as she alleges. Thus, the Court finds that Plaintiff puts forward sufficient facts to show that the MCC applies to Defendant because Plaintiff is a Montgomery County resident, the conduct occurred in Montgomery County and Thesis is a Montgomery County employer.

[5] *Harris v. Parsons Brinckerhoff Quade & Douglas*, on which Defendant relies, is distinguishable on this basis. *Harris v. Parsons Brinckerhoff Quade & Douglas, Inc.*, No. JFM 05-3355, 2006 WL 1892399 (D. Md. June 28, 2006). In *Harris,* the parties agreed the unlawful employment practice did not take place in Maryland. *Id.* at *1.

**1. Hostile Workplace**[6]

Moving to Plaintiff's individual claims, she first alleges that she was subject to a hostile workplace because of the sexually explicit comments directed to her by her co-workers and by Lazo, a supervisor. "To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).

Plaintiff claims that one male colleague, Edgar, started a rumor that she was a prostitute, which led to male colleagues at her job sites making comments such as "she is the woman who charges $100 to sleep with men," and being informed by a co-worker at the company's morning meeting that people were talking about her "selling herself." ECF No. 6 ¶¶ 16,18. This rumor was allegedly so widely disseminated that when a new employee joined the company, he referred to her by asking "for the girl who charges $100." *Id.* ¶ 19. Furthermore, Tinoco claims that from November 2014 through January 2015, her direct supervisor, Lazo, sent her crude, sexually explicit messages, such as "when we gonna fuck". *Id.* ¶¶ 23-25.

Tinoco claims that these sexually explicit comments were unwelcome and that she reported them to Spyridakis, Thesis' co-owner. ECF No. 6 ¶ 21. Because an employee's complaint about the offending conduct indicates that it was unwelcome, *see EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 314 (4th Cir.2008), Tinoco has established the first element of her

[6] Although Plaintiff's Opposition to Defendant's Motion to Dismiss further alleges a claim of quid pro quo sexual harassment, plaintiff "cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D.Md.1997); see also *Johnson v. SecTek. Inc.,* No. CIV.A. ELH-13-03798, 2014 WL 1464378, at *2 (D. Md. Apr. 14, 2014). Plaintiff's Complaint clearly states two counts, "hostile work environment based upon sex leading to constructive discharge" and "retaliation." ECF No. 6. If Plaintiff wishes to allege more claims against Thesis, she may do so by amending her Complaint pursuant to Fed. R. Civ. Pro. 15.

claim. Tinoco also alleges sufficient facts to establish the second element of her claim because the sexual nature of the comments demonstrates that the offensive conduct was based on her sex. ECF No. 6 ¶¶ 16, 25. Thus, the success of her claim turns on whether or not she can establish the third and fourth elements.

The third element of a hostile work environment claim has both subjective and objective components. *Ocheltree*, 335 F.3d at 331 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). Plaintiff establishes via her complaints to Spyridakis that she found the above referenced conduct to be subjectively abusive. In order to show that a reasonable person would share this perception, the Court considers "all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 333 (quoting *Harris,* 510 U.S. at 23). While "filter[ing] out…the sporadic use of abusive language, gender-related jokes and occasional teasing...[a]t the same time, the standard protects working women from the kind of male attentions that can make the workplace hellish for women." *Id.* (internal citations omitted).

Here, Plaintiff's complaint alleges that during her brief year-long tenure with Thesis, her male colleagues regularly commented that she charged money for sex, and that her supervisor sent her sexually explicit text messages over a three month period, including asking her when they would be having sex. ECF No. 6 ¶¶ 16, 24-25. These sexually explicit comments directed at her, in contrast to gender related jokes or occasional sexist comments regarding females in general, are sufficiently severe and pervasive to establish the third element of her case at this stage of litigation. *See Lopez v. BMA Corp.,* No. CIV.A. DKC 13-2406, 2013 WL 6844361, at *10 (D. Md. Dec. 24, 2013)(denying motion to dismiss where plaintiff's allegations included a

co-worker repeatedly stating "each day you are looking more sexy for me," and that he wanted her to be his girlfriend).

Finally, Tinoco must allege that the offensive conduct was imputable to Thesis, her employer. The liability of the employer varies depending on whether the alleged offender was merely a co-worker or was instead a supervisor. *Vance v. Ball State Univ.,*133 S. Ct. 2434, 2441, (2013). Thus, the Court will analyze the claims against her co-workers and supervisor independently as they relate to the fourth element of her claim.

With respect to harassment by a co-worker, "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Id.* That liability accrues if the employer, "knew or should have known of the harassment and failed to take prompt remedial action reasonably calculated to end the harassment." *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1131 (4th Cir. 1995)(internal quotation and citation omitted). Plaintiff alleges that Defendant knew or should have known of the harassment because two of Thesis' foremen knew about the comments and because she complained directly to Spyridakis, the co-owner of the company. ECF No. 6 ¶ 18, 21. Plaintiff further alleges that Thesis "took no steps to discipline the harassers, it conducted no sexual harassment trainings, and it did nothing to effectively alleviate the hostile work environment." *Id.* at ¶ 21. In response, Defendant claims that Thesis did take remedial steps and that they were told by Tinoco that the rumors had ceased. ECF No. 3 at 15. While discovery may prove Defendant right, at this stage the Court must accept the allegations in the Complaint as true. Thus, Defendant's Motion to Dismiss as to Plaintiff's claim of hostile workplace based on the action of her co-workers is denied.

With respect to the behavior of a supervisor, "the employer is vicariously liable unless the employer satisfies the so-called *Faragher–Ellerth* affirmative defense. Specifically, the employer must show '(1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided.'" *Jones v. Family Health Centers of Baltimore, Inc.*, 135 F. Supp. 3d 372, 380 (D. Md. 2015)(quoting *Vance,* 133 S. Ct. at 2442).

In *Vance*, the Supreme Court defined a supervisor as a person who the employer has "empowered… to take tangible employment actions against the victim, *i.e.,* to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance,* 133 S. Ct. at 2443. Here, while sparse, Tinoco has alleged that Lazo was her direct supervisor at the Twinbrook building site, ECF No. 6 ¶ 22, and mentions that Lazo had the ability to take tangible employment actions towards her, such as offering to pay her for the day if she would take his offer "to show you what 2 do with a guy." *Id.* ¶ 25. While Defendant alleges that they promptly took corrective action, ECF No. 3 at 14, such contentions regarding any affirmative defenses are again inappropriate at this stage. *See Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 834–35 (E.D. Va. 2014) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.2007)) (en banc) (alteration in original) ("At the Rule 12(b)(6) stage, a district court does not consider the merits of affirmative defenses except 'in the relatively rare circumstances where ... all facts necessary to the affirmative defense clearly appear[ ] *on the face*

*of the complaint.*'"').[7] Thus, Defendant's Motion to Dismiss with respect to Plaintiff's claims against her supervisor, Lazo, is denied.

**2. Constructive Discharge**

Plaintiff also alleges that Thesis constructively discharged her when they assigned her to work at a job site where she would be supervised by Lazo, her alleged harasser. ECF No. 6 ¶¶ 31-32. "In this circuit, the standard for constructive discharge requires a plaintiff to show both intolerable working conditions and a deliberate effort by the employer to force the employee to quit." *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993).

"'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. Rather '[i]ntolerability ... is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign,'--that is, whether he would have had no choice but to resign." *Dones v. Donahoe*, 987 F. Supp. 2d at 668)(quoting *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir.1996)(overruled on other grounds)(emphasis in original).

Here, a reasonable person, after having received sexually explicit text messages from her supervisor, could find it objectively intolerable to be asked to work at a job site where she would be under the direct management and control of said supervisor. This is similar to the situation discussed in *Lopez v. BMA Corp*, where the Court noted that "[w]hat action[s] [the employer] did

---

[7] Defendant also alleges that Lazo was not Tinoco's supervisor based on the content of a text message from a larger set of text messages not referenced by Plaintiff in the Complaint. ECF No. 27 at 12. As this is a Motion to Dismiss and the authenticity of the broader set of text messages is disputed, ECF No. 27 at 3, the Court will not consider such evidence at this time for this, or any other purpose suggested by Defendant.

take actually made [plaintiff's] situation worse, by changing [plaintiff's] assignments so that she would have greater interaction with [her alleged harasser]." *Lopez v. BMA Corp.*, No. CIV.A. DKC 13-2406, 2013 WL 6844361, at *12 (D. Md. Dec. 24, 2013). Furthermore, the alleged harasser in *Lopez* was a co-worker, being assigned to work with one's supervisor is arguably more intolerable and suggestive of a desire by the employer to force the employee to quit. Thus, Defendant's Motion to Dismiss Plaintiff's constructive discharge claim is denied.

**3. Retaliation**

In her third claim, Plaintiff alleges that Defendant retaliated against her for complaining about the sexual harassment she experienced. To properly plead retaliation, a plaintiff must allege "(1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir.1998). Tinoco has satisfied her pleading burden at this stage of litigation.

The first element of a retaliation claim requires a plaintiff to plead that she engaged in protected activity. *Id.* Opposition to an employer's policies by formal or informal complaints qualifies as protected activity. *See id.* at 259. ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."). Here, Tinoco has adequately alleged that she engaged in "protected activity" by complaining to Thesis' co-owner, Spyridakis, about the sexual harassment she was experiencing on January 23, 2015. ECF No. 6 ¶¶ 21, 29.

To establish the second element of her prima facie case, Tinoco alleges that two adverse actions were taken against her: (1) a temporary but dramatic reduction in hours and (2) her assignment to a job site where Lazo, her alleged harasser, would be supervising her. ECF No. 6 ¶¶ 30-31. The adverse action prong can be satisfied by showing that "the employer took

'materially adverse' action in response to an employee engaging in a protected activity, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Williams v. Prince William Cty., Va.*, 645 F. App'x 243, 245 (4th Cir. 2016)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68). Taken together, a reduction in hours and placement under the supervision of one's alleged harasser might well deter a worker from making a charge of discrimination. Thus, these allegations are sufficient to state a plausible claim of relief.

As for the third element, a plaintiff must plead facts sufficient to establish "a causal link between the protected activity and the adverse employment action." *Laughlin*, 149 F.3d at 258.[8] "Although a plaintiff may not conclusorily assert the existence of a 'causal connection,' the presence of a 'close' temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage." *Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 249 (D. Md. 2016)(citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Tinoco alleges that after complaining to Spyridakis on January 23, 2015, her hours were drastically reduced and a few weeks later, she was assigned to the job site where her alleged harasser worked. ECF No. 6 ¶¶ 30-31. While she does not state exactly when these events occurred, Tinoco says she resigned on or about February 20, 2015, *id.* ¶ 32, leading to the reasonable inference that the alleged adverse actions occurred before that date, with the reduction in hours occurring within weeks of her complaint. *Cf Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006)(finding that

---

[8] In their Motion to Dismiss, Defendant proffers that their seasonal process of "rotating layoffs" was a legitimate business reason for reducing Tinoco's hours. ECF No. 3 at 17. However, "[a]ny discussion of Defendant's proffered legitimate reasons for termination…is reserved for summary judgment. At the motion to dismiss stage,…it is the Plaintiff's complaint that controls." *Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 250 n.8 (D. Md. 2016)(internal citations omitted).

three to four months is "too long to establish a causal connection by temporal proximity alone.").Viewing the facts in the light most favorable to Tinoco, the Court finds that the temporal proximity between the January meeting and two adverse actions Tinoco alleges are close enough in time and circumstance to establish a causal connection. Of course, as Defendant suggests, discovery may ultimately reveal evidence that causes the Court to view this temporal proximity differently. But for now, Tinoco has met her pleading burden. The Court will therefore deny Thesis' Motion to Dismiss Tinoco's retaliation claim.

## III. CONCLUSION

For the reasons stated above, the Court will deny Defendant's Motion to Dismiss, ECF No. 2. A separate order follows.

Dated: January 3, 2017

GEORGE J. HAZEL
United States District Judge